UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JANELLE FRANKS | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 1:06-CV-00227 |
| WATERFIELD MORTGAGE COMPANY, INC. | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the court is Defendant Waterfield Mortgage Company, Inc.'s ("Waterfield's") Motion for Summary Judgment filed on February 20, 2007. Plaintiff Janelle Franks ("Franks") responded on February 26, 2007 to which Waterfield replied on March 7, 2007. For the following reasons, Waterfield's Motion will be DENIED and the cause will be REMANDED to state court.

**APPLICABLE STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802

1

F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## Factual Background

With few exceptions which shall be noted herein, the parties agree that the relevant facts are as follows: Franks is a thirty-four year old female formerly employed Waterfield as a "client coordinator." At the time of her separation from Waterfield, Franks had been employed with Waterfield for approximately ten years.

On January 13, 2006 Waterfield officially announced to the public that it had been purchased by American Home Mortgage ("AHM") and that it would be closing. Also on that day, Waterfield officials held a meeting to make the announcement regarding the sale. Senior Vice President of Waterfield, Dave Depodesta ("Depodesta") and Deborah Schroeder, a Human Resources Generalist,

conducted the meeting.  Schroeder and Depodesta explained to the employees that there would be a reduction in force and that some employees would be losing their jobs.  Additionally, they explained that some employees would be given severance pay according to the Waterfield Mortgage Company Severance Pay Plan ("Severance Plan") and some employees would be offered employment with the new owner AHM.  During this meeting, one of the Waterfield employees asked a question regarding the Severance Plan.  The parties disagree on the content and specific wording of the question but, reading the facts most favorably to Franks, the non-movant, the question presented to the company representatives was: Does an employee that is offered a position at AHM but declines it, continue to receive full pay and benefits through March 14, 2006 and still remain eligible for the standard severance package being offered to employees? Depodesta initially responded to this question but deferred the question to Schroeder who indicated that not only would pay and benefits be extended to March 14, 2006 but that severance benefits would be available to such an employee – even assuming they declined an offer of employment with AHM.

On the same day the announcement of the acquisition was communicated to Waterfield employees, Franks was offered a comparable job with AHM which she, in turn, declined due to conflicts she had with the new work schedule presented. Subsequently, on January 17, 2006, Franks emailed Schroeder to clarify her understanding of what had occurred at the January 13 meeting:

> Deborah,
>
> One more question, you stated in the meeting that some employees will be offered a position with AHM and if the individual decides not to take that position, they will fall into the category along with the other employees as far as receiving their severance pay, unearned vacation days and the date of termination ... did I understand this correctly?

(Dfdt's Exh. B).  Schroeder responded to this email the same day:

3

>Correct. It would be no different than if an employee declined an offer from any other outside company. However I strongly advise you to make a decision before the date of closing, which I believe is this Saturday.
>
>If you decline an offer from AHM and you meet the conditions of our severance pay plan, you will still be eligible to receive severance and earned, unused vacation from Waterfield.

(Pltf's Complaint, Exh. 1).

>On the following day, Schroeder emailed Franks with the following information:
>
>We received information yesterday from Waterfield attorneys pertaining to eligibility for severance pay. If an employee declines a job offer with American Home that is comparable to the current position, that is considered a resignation and the employee is not eligible for severance pay.

(Dfdt's Exh. B).[1]

On January 19, 2006, Franks was extended a revised offer of continued employment with AHM which included a change to the work schedule to accommodate Franks's needs. Again, Franks rejected this offer. Subsequently, on January 20, 2006, AHM officially acquired Waterfield. On January 24, 2006, Franks received the following letter advising her of her termination and the discontinuation of her benefits:

>Dear Ms. Franks:
>
>This is to inform you that your employment with Waterfield Financial Corporation is terminated effective January 20, 2006, due to the following:

---

[1]According to the express terms of the Severance Plan benefits are provided "only in the event of a Qualifying Termination." (Severance Plan at p. 2, ¶D(1)). "Qualifying Termination" is a term of art and is elsewhere defined as "a termination of regular employment with the Employer due to a permanent reduction in force, the elimination of your job or position, or the closing of your office or branch." *Id.* at ¶D(2). The Severance Plan also sets forth numerous exceptions to this general rule. For instance, the Severance Plan indicates "you will not have a Qualifying Termination if you accept an offer of employment in another position with the Employer, or you decline an employment off from the Employer for a position that the Company considers to be comparable to your current position and that will not require you to relocate." *Id.*

4

>On January 13, 2006, the company announced an acquisition by American Home Mortgage, and that a number of employees in the Wholesale division would be offered continued employment with the purchasing company. That same day, your manager extended a comparable job offer to you, which you declined. One of your concerns had to do with changing your work schedule from 8 am to 5pm to 11am to 8 pm.
>
>On January 19, 2006, the offer was adjusted to accommodate your need for an 8am to 5pm work schedule. You did not accept this offer.
>
>On January 20, 2006, closing took place and Waterfield Financial is now owned by American Home Mortgage. Since you have not accepted this job offer, we have no other recourse but to end your employment.
>
>Any benefits you elected with Waterfield ended as of midnight on January 20, 2006. Information regarding continued health coverage will be mailed to your home. Your last paycheck will also be mailed to you.
>
>Sincerely,
>
>s/ Deborah Schroeder

(Pltf's Comp. Exh. 2).

Franks did not, consistent with what Schroeder had told her, receive continued pay and benefits through March 14, 2006.

Based upon these events, Franks filed suit in state court alleging breach of contract, promissory estoppel, and constructive fraud asserting a right to pay and benefits through March 14, 2006 in accordance with the representations made by Waterfield officials. Waterfield subsequently removed the case to this court under the theory that the claims were federal in nature in that they involved an interpretation of an Employee Welfare Benefit Plan by a plan participant pursuant to ERISA. Waterfield then moved for summary judgment contending that the state law claims asserted in Franks's Complaint are preempted by ERISA and that the terms of the Severance Plan preclude payment of severance to Franks.

5

## **DISCUSSION**

As set out above, Franks's claims rest upon common law claims of breach of contract, promissory estoppel, and constructive fraud. The questions presented in the present motion are two-fold: first, whether plaintiff's claims "relate to" an ERISA plan so as to invoke the doctrine of complete preemption and are thus properly recharacterized as falling within the scope of ERISA; and second, assuming that ERISA does preempt the state law claims, whether summary judgment on the merits of the claim for benefits under ERISA is appropriate.

We begin with the general principal that for federal question jurisdiction to exist, a case must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Ordinarily a court determines whether there is federal question jurisdiction by examining the plaintiff's well-pleaded complaint, for '[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law.' " *Rice v. Panchal,* 65 F.3d 637, 639 (7th Cir.1995) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987)). "Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading." *Rice,* 65 F.3d at 639. The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation.

Although a preemption defense cannot be the basis for original federal jurisdiction, "the Supreme Court has fashioned an exception to this rule where Congress has completely preempted a given area of state law." *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989). This jurisdictional doctrine provides that "to the extent that Congress has displaced a plaintiff's state law claim, that intent informs the well-pleaded complaint rule, and a plaintiff's attempt to utilize the displaced state law is properly 'recharacterized' as a complaint arising under federal law." *Rice,* 65 F.3d at 640 n.

6

2 (citing *Taylor,* 481 U.S. at 64, 107 S.Ct. at 1547). Thus, federal subject matter jurisdiction exists if the complaint concerns an area of law "completely preempted" by federal law, even if the complaint does not mention a federal basis of jurisdiction. *Rice*, 65 F.3d at 642.

ERISA §514(a) says that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "The trick, as the Court explained in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.,* 514 U.S. 645 (1995), is to determine how close a relation the state law must have to the plan." *McDonald v. Household Intern., Inc*. 425 F.3d 424, 428 (7th Cir. 2005).

In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983), the Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96-97. It went on to stress that ERISA does not preempt "only state laws specifically designed to affect employee benefit plans," *id.* at 98, 103 S.Ct. 2890, or "only state laws dealing with the subject matters covered by ERISA," *id.* Instead, as the Court reiterated later in *Aetna Health Inc. v. Davila,* 542 U.S. 200 (2004), "ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plans regulation would be exclusively a federal concern." *Id.* at 2495 (internal citations and quotations omitted).

In her brief, Franks concedes that any claim for benefits under the terms of the Severance Plan regardless of how it was legally characterized in the Complaint would, in fact be futile under ERISA as she would have to overcome a heavy burden. *See* (Resp. p. 4: "Franks recognizes the difficulty of prevailing on an ERISA claim under the arbitrary and capricious standard and the facts of this case and, therefore, consciously chose to not pursue such a claim."). It is for this reason, Franks acknowledges, that she did not bring such a claim. Franks argues instead that her claims

7

do not and were not intended to relate to the Severance Plan at all and thus, removal of this case to federal court was improper. Indeed, Franks argues that the Complaint is directed at the specific representations made to her that her pay and benefits would remain intact until March 14, 2006 even if she did not accept a job with AHM. (Complaint, ¶11-13:"Waterfield has breached its agreement with Franks in that it has failed to pay her pay and benefits from January 20, 2006 to March 14, 2006; Complaint ¶17: "Under the circumstances, Waterfield should be estopped from refusing to pay Franks her wages and benefits through March 14, 2006; Complaint ¶19: "Waterfield acted fraudulently with intent to deceive Franks...when it represented to the employees ... they would be paid through March 14, 2006."). In her responsive brief, Franks further elaborates: "Franks filed suit on May 10, 2006 in Allen Superior Court **not** alleging a violation of any ERISA severance plan but alleging that Waterfield failed to honor its promise to Franks and other employees that if they declined an offer with American Home Mortgage they would still be entitled to receive pay and benefits through March 14, 2006 (in addition to any severance benefits under the Plan)." (Resp. at 1). Thus, in Franks's view, because her Complaint seeks enforcement of the promise of additional pay and benefits through March 14, 2006 under an independent legal theory unrelated to any interpretation of the Severance Plan, her state law claims are not subject to ERISA preemption and this cause should be remanded to state court.

Even with her concession and the distinction she attempts to make regarding her claims, whether Franks' breach of contract, promissory estoppel, and constructive fraud claims are completely preempted is "a difficult question." *Sembos v. Philips Components,* 376 F.3d 696, 703

-704 (7th Cir. 2004).[2]  This is, in part, because of the existence of a second doctrine termed "conflict preemption" which has relevance here.  In *Rice,* the Seventh Circuit clarified the distinction between "complete preemption" and "conflict preemption" under ERISA and concluded that where state law claims are merely subject to conflict preemption, they are not "recharacterized" as claims arising under federal law. *See also*, *Warner v. Ford Motor Co.,* 46 F.3d 531 (6th Cir.1995) (explaining the difference between "complete preemption" and "conflict preemption" under ERISA). As the court explained in *Rice*:,

> The difference between complete preemption under §502(a)[3] and conflict preemption under §514(a) is important because complete preemption is an exception to the well-pleaded complaint rule that has jurisdictional consequences. If a state law claim has been 'displaced,' and therefore completely preempted by §502(a), then a plaintiff's state law claim is properly 'recharacterized' as one arising under federal law. But state law claims that are merely subject to 'conflict preemption' under §514(a) are not recharacterized as claims arising under federal law; in such a situation, federal law serves as a defense to the state law claim, and therefore, under the well-pleaded complaint rule the state law claims do not confer federal question jurisdiction. Thus, complete preemption under §502(a) creates federal question jurisdiction whereas conflict preemption under §514(a) does not.

---

[2]In *Sembos*, the plaintiff alleged state law claims of breach of contract and promissory estoppel contending that he had two contracts with his former employer, Philips Components ("Philips").  The first contract, he alleged, was an agreement wherein Philips promised him that his pension benefits would remain the same if he accepted a position with BCC, an acquiring company of a division of Philips; or, alternatively if his benefits were not the same, the plaintiff could continue his employment with Philips. The second contract, Sembos alleged was a promise by Philips to actively look for other employment opportunities for Sembos.  The district court granted summary judgment on the state law claims, concluding they were preempted by ERISA.  The Seventh Circuit, noting that the question was a difficult one, and reciting a number cases, affirmed the lower court decision but specifically refused to "delve into the intricacies of ERISA preemption in this case."

[3]Section 502(a) provides:
> A civil action may be brought –
>> (1) by a participant or beneficiary
>>> (A)   for the relief provided for in subsection (c) of this section, or
>>> (B)   to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

9

*Rice.* 65 F.3d at 640 (internal citations omitted).

Three factors are relevant for determining whether a claim is within the scope of § 502(a): (1) whether the "plaintiff [is] eligible to bring a claim under that section;" *id.* at 641(2) whether the plaintiff's "cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)," *id.*; and (3) whether the plaintiff's "state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Id.* at 644. Upon careful analysis of these three factors in the present case, it is clear that this cause must be dismissed and the case remanded to state court.[4]

As a plan participant, Franks was eligible to bring an action under ERISA to collect her severance benefits, although her success on the merits may well be limited by various legal hurdles as Plaintiff herself acknowledges. Franks, however, consciously chose not to pursue a claim for severance benefits. Her claim, as she has argued it, is for the pay she was promised by Waterfield through March 14, 2006. No ERISA plan is alleged to have been violated nor any plan provision breached, no action for enforcement of any ERISA plan is asserted and there is no ERISA plan that requires interpretation to support that cause of action. Rather, her claim for pay promised to her is completely unrelated to any ERISA plan as far as the court can discern. Indeed, proving the state law claims for breach of contract, promissory estoppel, and constructive fraud involve a purely

---

[4] There is no question that the Complaint refers cryptically to the term "benefits" throughout its allegations without specifying what type of benefits and it also specifically refers to plaintiff's eligibilty for severance benefits. (Complaint, ¶4). In addition, the attachments, which are incorporated by reference in the Complaint, also specifically reference severance benefits. These references, while perhaps unintended to spur action or removal by Waterfield are not innocuous references; indeed, in the context of ERISA references to benefits or benefit plans raise red flags as to whether ERISA preempts the field of claims set out in a Complaint. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, (1987). Thus, the court cannot fault Waterfield for attempting to remove the case to federal court.

factual inquiry not requiring any interpretation of an ERISA plan. In fact, the ERISA plan appears irrelevant to the dispute as the remedy here is completely independent of any ERISA plan. *See Rice*, 65 F.3d at 643-644 (highlighting cases and noting "the common thread running through these cases is that complete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law."). Accordingly the court concludes that Plaintiff's claims are not subject to complete preemption under §502(a).

## **CONCLUSION**

In sum, any finding of complete preemption in this cause requires analysis of some factual connection between the state law claims for relief, which by themselves do not require preemption, and an ERISA-related plan. *See Sembos,* 376 F.3d at 703-704 (stating that a "state law claim 'relates' to an employee benefit plan if it has a connection with or reference to such a plan" and whether state law claims are preempted by ERISA § 514(a) is a difficult question often turning on factual connections to an ERISA-related plan.); *see also Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1492-1495 (7th Cir.1996) (highlighting the importance of establishing a factual connection between a plaintiff's state law claims and an ERISA plan when a court engages in conflict preemption analysis). This connection does not exist under the plaintiff's limited state law claims for relief, so the court declines to find the claims at issue completely preempted by ERISA.

As noted at the outset, for federal question jurisdiction to exist, a case must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because the court concludes that the doctrine of complete preemption is inapplicable here, federal question jurisdiction is not present. *See Rice*, 65 F.3d at 646 (finding no complete preemption, remanding to district court with instructions to dismiss the case for lack of jurisdiction and remand to state court). This cause is

11

hereby DISMISSED for LACK OF JURISDICTION and REMANDED to the Allen Superior Court.

Entered: This 24th day of April 2007.

                                                s/ William C. Lee
                                                United States District Judge